STATE OF NEW JERSEY, v. RALPH VICTOR WILLIAMS, DEFENDANT.

Superior Court of New Jersey
Law Division
(Criminal)

Decided October 17, 1975.

546

*Mr. Richard L. Abramson* for defendant (*Messrs. Gladstone, Hart, Mandis, Rathe & Shedd,* attorneys).

*Ms. Zulima V. Farber,* Assistant Prosecutor for the State (*Mr. Joseph C. Woodcock,* Prosecutor of Bergen County, attorneys).

SCHIAFFO, J. C. C., Temporarily Assigned. Defendant is charged with possession of stolen property, in violation of *N. J. S. A.* 2A:170–41.1. He moved to suppress the evidence, stating that the search was unlawful because the officer did not possess the authority to stop him.

On June 11, 1975, at about 2:30 A.M., Patrolman Whitney of the Montvale Police Department radioed the Park Ridge Police Department that a van with its lights off was parked on the side of the road near the intersection of Pascack Road and Grand Avenue in Park Ridge. Patrolman Whitney observed the vehicle while on routine patrol of Grand Avenue in Montvale. Grand Avenue is an east-west road which forms the common boundary between the Bergen County municipalities of Park Ridge and Montvale. The north side of the road is in Montvale and the south side in Park Ridge. Patrolman Ruth of the Park Ridge Police Department responded to the said intersection but

the vehicle had already departed. Seeing nothing to the east on Grand Avenue, Patrolman Ruth turned west onto Grand Avenue in Montvale. He soon spotted the van in question and observed someone throw a beer bottle from the passenger side of the vehicle. Patrolman Ruth then ordered the vehicle to stop. He approached the van from the passenger side and asked the passenger sitting next to the door to go back and pick up the bottle. The passenger denied throwing the bottle and refused to pick it up. The officer then observed several beer bottles of the same brand as the discarded bottle on the floor of the van. He pointed this out to the passenger, who then agreed to pick up the bottle.

Officer Ruth proceeded to walk around to the driver's side of the van and asked the driver for his license and registration, which Williams produced. The officer testified that he asked Williams if he could search the van and advised him that he had the right to refuse permission to search. To this Williams replied, "Go ahead, I have nothing to hide." Upon searching the vehicle Patrolman Ruth found the stolen license plate. Williams did not contradict Ruth's testimony, but instead corroborated it. Williams indicated that there was some talk of a search and that the officer requested to search the vehicle. He could not remember his answer to this request. The court finds consent was given justifying the search, if the officer had the authority to stop the van. *State v. Johnson*, 68 *N. J.* 349 (1975).

▮ Defense counsel indicates that because the vehicle was stopped in Montvale, the Park Ridge police officer did not have jurisdiction over the vehicle, noting the absence of fresh pursuit and citing *State v. McCarthy*, 123 *N. J. Super.* 513 (Law Div. 1973). The prosecutor has argued that when Officer Ruth observed the beer bottle thrown from the van, he could make a citizen's arrest of the person who threw the bottle. To effectuate this arrest, the private citizen (Patrolman Ruth) had to stop the vehicle, and after

the vehicle was stopped Patrolman Ruth could request to search the van. Having obtained the consent of the driver, Patrolman Ruth, acting as a private citizen, found the stolen property and subsequently arrested Williams. In support of this argument the prosecutor cites *McCarthy, supra* at 517–518, and *N. J. S. A.* 2A:169–3, arrest of a disorderly person without process. The court finds the prosecutor's argument to be without merit. Here Williams believed he gave his consent for a search of his vehicle to a uniformed police officer, not to a private citizen. The State cannot therefore justify the stopping of the vehicle and subsequent consent to search on the basis of a private citizen's right to arrest. See *Johnson, supra* at 68 *N. J.* 353–354. However, the court denies Williams motion for suppression of the evidence on other grounds.

■ In the absence of statutory permission, a peace officer when making an arrest within the State, has authority to make an arrest only within the confines of the geographical unit of which he is an officer, except when he is in fresh pursuit of a person. *N. J. S. A.* 40A:14–152, *State v. McCarthy, supra* 123 *N. J. Super.* at 517; 6A *C. J. S. Arrest,* § 53b at 125, and *N. J. S. A.* 2A:156–1 *et seq.* Likewise, ordinarily a municipal court only has territorial jurisdiction over the territory embraced within such municipality, "and any premises or property situated or located partly within and partly without such municipality * * *." *N. J. S. A.* 2A:8–20. However, *N. J. S. A.* 39:5–3 further expands the jurisdiction of a municipal court, providing that:

[W]hen a person has violated a provision of this subtitle [Title 39 Motor Vehicles & Traffic Regulations] * * * all proceedings shall be brought before a magistrate having jurisdiction in the municipality in which it is alleged that the violation occurred *but when a violation occurs on a street through which the boundary line of two or more municipalities runs or crosses, then the proceeding may be brought before the magistrate having jurisdiction in any one of the municipalities divided by said boundary line* * * *. [Emphasis added]

■ It must be determined whether the Legislature, by granting jurisdiction to municipal courts in neighboring communities for violations which occur on roads that form their common boundaries, intended to extend the territorial jurisdiction of those municipalities' police forces to give them authority to stop vehicles on the roads which form their common boundary.

Testimony revealed that while driving down Grand Avenue on the Montvale side, Patrolman Ruth noticed a beer bottle thrown from the van, in violation of *N. J. S. A.* 39:4–64 which provides "no person shall throw or drop any bundle, object * * * from a vehicle whether in motion or not when such vehicle is on a highway." This provided Patrolman Ruth with the authority to stop the vehicle if it was in Park Ridge. Because *N. J. S. A.* 39:5–3 gives the Park Ridge Municipal Court jurisdiction over this offense committed on a boundary road, the Park Ridge patrolman is permitted to stop the van, even though the offense was actually committed on the Montvale side of the road. To find otherwise would frustrate the purpose of *N. J. S. A.* 39:5–3 which confers jurisdiction in such a case on the Park Ridge Municipal Court. The court in *McCarthy, supra,* stated:

[I]n gathering the legislative intent from the comprehensive statutory expression we are guided by the judicial stricture that interpretations which lead to absurd and anomalous results are to be avoided. So far as the terms of legislation and proper consideration of the subject to it will permit, the statutory objective is to be fulfilled. *State v. Gill,* 47 *N. J.* 441, 444 (1966) ; *Robson v. Rodriguez,* 26 *N. J.* 517, 528 (1958). [at 521]

In the present case it would be inconsistent to find that the Park Ridge Municipal Court has jurisdiction over a road that forms its boundary line, but that its police officers cannot exercise their authority on that road.

Although there have been no New Jersey cases interpreting the meaning of *N. J. S. A.* 39:5–3, with respect to

jurisdiction on a boundary road between two or more municipalities, the State of California has a similar statute whose meaning has been interpreted. *West. Cal. Pen. Code,* § 782 (1951) provides that "when a public offense is committed on the boundary of two or more jurisdictional territories or within 500 yards thereof, the jurisdiction of such offense is in any competent court within either jurisdictional territory." In interpreting that statute the court stated that:

Since authority to prosecute crime extends to offenses which take place just outside the boundaries of a particular jurisdiction, we believe that, *a fortiori*, authority to investigate crime extends beyond the territorial boundaries of a particular jurisdiction in the same manner and to the same extent. Under authority of § 782 [an officer], acting as a police officer, could investigate suspicious circumstances while patrolling the county highway adjacent to the boundaries of the City of Covina and could temporarily detain a suspect on the highway for further investigation in the same manner as though he had discovered him within the territorial boundaries of his own jurisdiction. [*People v. Rogers*, 241 *Cal. App.* 2d 384, 50 *Cal. Rptr.* 559, 561 (D. Ct. App. 1966)]

With respect to the arrest, the court stated that *West. Cal. Pen. Code,* § 782 also authorizes a police officer to make an arrest on or near the boundary of his jurisdiction. *Rogers, supra,* 50 *Cal. Rptr.* at 561.

Noteworthy also is *N. J. S. A.* 2A:11–5 which states:

Where any * * * highway or road within this state divides any two counties thereof, the jurisdiction of each of such counties over the same shall be reciprocal; and all arrests by virtue of any legal process * * * made thereon * * * shall be as good and effectual as if made within the body of either of such counties.

Like *N. J. S. A.* 39:5–3, *N. J. S. A.* 2A:11–5 concerns itself with joint jurisdiction. In *State v. Green,* 62 *N. J.* 547 (1973), the court stated that:

[I]t is basic in the construction of legislation that every effort should be made to harmonize the law relating to the same subject matter. Statutes *in pari materia* are to be construed together when

helpful in resolving doubts or uncertainties and the ascertainment of legislative intent. [at 554]

The court in *Mimkon v. Ford*, 66 *N. J.* 426, 434 (1975), further clarified the rule for harmonizing statutes *in pari materia*, saying:

While the rule most obviously applies when the statutes in question were enacted during the same session or went into effect at the same time, *Fried v. Kervick*, 34 *N. J.* 68, 70–71 (1961); *State v. Wasserman*, 75 *N. J. Super.* 480, 487–488 (App. Div. 1962), aff'd 39 *N. J.* 516 (1963), or where they make specific reference to one another, 2A *Sutherland, Statutory Construction* (Sands ed. 1973), § 51.03 at 299, it may appropriately be applied even when the statutes were adopted at different times and make no reference to each other. *In re Book*, 90 *N. J. Eq.* 549, 552–553 (E. & A. 1919); see *State v. Green*, 62 *N. J.* 547 (1973).

*N. J. S. A.* 39:5–3 will be interpreted in a manner consistent with *N. J. S. A.* 2A:11–5 so as to effectuate the legislative intent. For these reasons the court denies the motion to suppress the evidence seized, finding that *N. J. S. A.* 39:5–3 does give a municipal policeman territorial jurisdiction over the entire road which forms the boundary between two neighboring municipalities.